Martin Schwerin v. Commissioner.
Schwerin v. Commissioner
Docket No. 106873.
United States Tax Court
1943 Tax Ct. Memo LEXIS 431; 1 T.C.M. (CCH) 661; T.C.M. (RIA) 43100; February 26, 1943
*431 Henry G. Burke, C.P.A., for the petitioner. Philip A. Bayer, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent has determined income tax deficiencies against the petitioner for the years 1936 and 1937 in the respective amounts of $6,160.65 and $6,250.46. The sole question presented is whether the petitioner is liable on 75 percent or 50 percent of the net income of the partnership of Outwater, Schwerin and Barnet for the years 1936 and 1937. Findings of Fact The petitioner is an individual residing in Tucson, Arizona, and is engaged in fluorspar mining near Elizabethtown, Illinois, which mining business is conducted as a partnership under the name of Outwater, Schwerin and Barnett. His income tax returns for the years 1936 and 1937 were filed with the Collector of Internal Revenue for the Eighth District of Illinois. In 1920 the petitioner acquired approximately 268 3/4 acres of land near Elizabethtown, Illinois, at $50 an acre. In addition he expended other sums to establish his title, thereby bringing the total cost of the land to about $23,000. He believed that fluorspar mine could be operated on the land, and in 1923 began *432 negotiations with Addison Outwater, of New York City, for financing the development of the property. These negotiations culminated in an agreement dated May 2, 1927, whereby Outwater was to supply $30,000 in case for the purpose mentioned. Of this amount, $5,000 was to be paid presently and the balance at the rate of $1,200 per month, with the provision that the installments might be increased if the reasonable needs of development of the property should require it. The agreement provided that when the entire $30,000 had been advanced by Outwater, or sooner if the parties agreed, the petitioner should cause a corporation to be organized under the laws of the state of Illinois, to which the property should be conveyed, the mining operations thereafter to be carried on by the corporation. The authorized capital stock of the corporation was to consist of three classes: $50,000 par value of Seven Percent Cumulative First Preferred Stock, $330,000 par value of Second Preferred Stock, entitled to no dividends, and 1,000 shares of no par value common stock. The First Preferred Stock was to be issued only for additional capital. Of the $330,000 par value of Second Preferred Stock, $50,000 *433 was to be held in the treasury, and of the remaining $280,000 par value of such stock the petitioner was to receive $250,000 and Outwater $30,000. The 1,000 shares of no par value common stock were to be divided equally between them. It was contemplated that out of the first proceeds from the operation of the property the $30,000 par value of Second Preferred Stock issued to Outwater and the $10,000 par value of such stock issued to the petitioner should be redeemed contemporaneously. After the redemption of that stock, the proceeds from operations were to be allocated 50 percent to the redemption of the remaining $240,000 par value of Second Prefered Stock held by the petitioner and 50 percent as dividends upon the common stock held equally by the petitioner and Outwater. The moneys advanced by Outwater were to be handled through Central Union Trust Company of New York, which later became Central Hanover Bank & Trust Company, and by a concurrent agreement dated May 2, 1927, between the petitioner, Outwater and the bank, it was agreed that the mining property which had been conveyed to the bank as trustee should, upon the joint demand of the petitioner and Outwater, be reconveyed *434 to the corporation to be formed or to other nominees of the said parties. The petitioner proceeded in the development of the property according to the agreement. It became necessary to have development funds in excess of the $30,000 advanced by Outwater, and such funds were provided 50 percent by the petitioner and 50 percent by Outwater. No corporation was formed, however, and on May 17, 1929, a new agreement was entered into between the petitioner and Outwater revising to some extent the original plans for a corporation. Under this second agreement the common stock was to remain the same and was to be issued 501 shares to the petitioner and 499 shares to Outwater. All preferred stock was eliminated. It was contemplated that the proceeds from operations should be distributed under the heading of "royalties", which were to be computed on the tonnage of fluorspar mined. The first $33,000 was to be distributed in equal amounts to the petitioner and Outwater and was to cover the additional development funds provided by them in the interval. The next $40,000 was to be distributed 75 percent to Outwater and 25 percent to the petitioner. Upon payment of the two amounts mentioned, the next *435 $480,000, to become distributable as "royalties" was to be distributed 75 percent to the petitioner and 25 percent to Outwater. After this amount had been paid, all subsequent payments were to be on the basis of one half to the petitioner and the other half to Outwater. This agreement disclosed for the first time that C. M. Barnett, Jr., was the owner of one-half of the interest previously indicated as belonging to Outwater. The corporation contemplated by the agreement of May 27, 1929, was not organized and the mining operations were continued by the petitioner as before, the proceeds therefrom being distributed, however, according to the ratios prescribed by the 1929 agreement. Under date of May 1, 1933, the petitioner, Outwater and Barnett executed a partnership agreement for the operation of the above-described properties. They were operating under this agreement during the years 1936 and 1937, the years here in question. In that agreement it was provided that "Out of profits and income of the copartnership" 75 percent should be the share of the petitioner, 12 1/2 percent the share of Outwater and 12 1/2 percent the share of Barnett until aggregate payments of $460,000 had been *436 made, after which the profits and income were to be divided 50 percent to the petitioner and 25 percent each to Outwater and Barnett. The ninth paragraph of the partnership agreement provided as follows: NINTH: It is understood and agreed that the copartnership hereby defined is not a new partnership but is a continuation of the partnership existing between the partners hereto since the year 1927, and is a definition of the rights and interests of the parties as created and covered by oral agreements between the parties in addition to the aforesaid agreements dated May 2nd, 1927, and May 17th, 1929, have been in part performed and in part modified and abrogated by such agreements, and it is understood and agreed that the present agreement supersedes the prior agreements between the parties, and particularly that the written agreements last mentioned are hereby cancelled and abrogated. Title to the mining properties was conveyed to the partnership of Outwater, Schwerin and Barnett by the Central Hanover Bank & Trust Company on August 18, 1937. For the years 1933, 1934, 1935, 1936 and 1937 the petitioner executed for the partnership and filed partnership returns of income showing *437 the distributable shares of the partnership income to be 75 percent to the petitioner and 12 1/2 percent each to Outwater and Barnett. The actual distributions made by the partnership to the three partners for the years 1936 and 1937 were in excess of their distributable shares of income as shown on the partnership returns, the excess distributions being made from depletion and depreciation reserves. All distributions, however, were made on the basis of 75 percent to the petitioner and 12 1/2 percent each to Outwater and Barnett. For the above years up to and including 1936 the petitioner reported on his individual returns as his income 75 percent of the net income of the partnership as his distributable share thereof. In his income tax return for 1937 he reported only 50 percent of the net income of the partnership as his distributable share of the partnership income. For the year 1936 the petitioner filed a claim for refund, the basis for the said claim being that he had reported 75 percent of the net income of the partnership as his distributable share thereof, whereas his distributable share amounted to only 50 percent. On some date not shown, the petitioner was advised by *438 the respondent that there was an overassessment of his income tax for the year 1936 in the amount of $3,821.02. The amount of the overassessment was credited in part to the tax years 1935 and 1937 and refunded in part. The respondent thereafter concluded that the petitioner's distributable share of the partnership income was 75 percent and determined the deficiencies here in question on that basis. Opinion The petitioner contends that according to the only reasonable interpretation of the partnership agreement the partnership profits were to be shared 50 percent by himself and 25 percent each by Outwater and Barnett and that the 25 percent additional of the said profits received by him represented partnership profits constructively received by Outwater and Barnett and paid to him as their share of the purchase price to be paid by the partnership for the mining properties which had been originally acquired by the petitioner as his individual property. He contends that this interpretation of the partnership agreement is substantiated by the terms and provisions of the original plan to incorporate the business and by the provisions of the partnership agreement of May 1, 1933, to the *439 effect that after $460,000 had been distributed on the basis of 75 percent to himself and 12 1/2 percent each to Outwater and Barnett, the income and profits of the partnership thereafter were to be shared on a basis of 50 percent to himself and 25 percent each to Outwater and Barnett. The petitioner admits that his partners do not agree with his present interpretation of the partnership agreement. The partnership agreement speaks for itself, and we find nothing in it which justifies the conclusion contended for by the petitioner. The facts show that in starting the business the petitioner put up his mining property for Outwater, for himself and Barnett, put up certain cash for development purposes. Distributions of the proceeds from the mining operations were made from time to time according to the agreement of the parties. Some indication of the basis of these distributions is found in the 1927 and 1929 agreements. Those agreements contemplated the organization of a corporation which was never formed and the parties finally under date of May 1, 1933, reduced their working agreement to writing in the form of a partnership contract. Their rights to income and profits are fixed thereby *440 and the determination of the respondent as to the distributable shares of the partnership income for the years 1936 and 1937 is in accord with the terms of the partnership agreement. The fact that distributions were made from the depletion reserve on the same basis furnishes no ground for a contrary conclusion. Neither is it of any moment that the respondent at one time acceded to the view here contended for by the petitioner and refunded part of the income tax reported and paid for 1936. That Congress intended that the respondent under such circumstances should collect as a deficiency amounts previously refunded in error is apparent from section 271 of the Revenue Act of 1936 defining the term "deficiency." Decision will be entered for the respondent.